IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSHUA LEE CARTER, #163322, § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:22-CV-1797-X-BK |
| § | |
| THE STATE OF TEXAS, ET AL. § | |
| DEFENDANTS. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* prisoner case was referred to the undersigned United States magistrate judge for pretrial management, including the issuance of findings and a recommended disposition where appropriate. The Court granted Plaintiff Joshua Lee Carter ("Carter") leave to proceed *in forma pauperis* ("IFP") and withheld service of process pending judicial screening. As explained below, Carter's claims should be **DISMISSED**.

**I. BACKGROUND**

On July 6, 2023, in Ellis County, Carter pled guilty to, and was convicted of, second-degree arson and sentenced to 10 years' imprisonment.[1] Doc. 3 at 4; Doc. 8 at 1; *State of Texas*

---

[1] In his responses to the MJQ, Carter says that the Court should sever his claims seeking habeas relief under 28 U.S.C. § 2241 and forgive him for not exhausting his administrative remedies for those claims because such remedies were unavailable. Doc. 8 at 1-2. But after filing this suit, Carter filed a separate application for habeas relief under § 2241, which the Court denied in May 2023. *See Carter v. Norman*, 3:23-CV-673-D-BN. Further, Carter plead guilty to the arson charge during the pendency of this suit, so any request for relief under § 2241 is moot. *See Chadman v. Fowler*, Civil Action No. 4:17-cv-703-O, 2018 WL 4051868, at *2 (N.D. Tex. Aug. 24, 2018) (collecting cases for the proposition that a conviction moots a § 2241 petition).

*v. Joshua Lee Carter*, 46935CR (443rd Jud. Dist. Ct. July 6, 2023).[2] He now claims that he is wrongfully incarcerated and complains about the conditions of his confinement at the Wayne McCollum Detention Center (the jail), including the level of medical care. *See generally* Doc. 3; Doc. 8.

In his complaint and responses to a magistrate judge's questionnaire (MJQ), Carter alleges that Ellis County Fire Marshal Tim Birdwell (Birdwell) lied to obtain a warrant for his arrest for arson by claiming falsely that there were pictures of the fire on Carter's phone. Doc. 8 at 22. Carter contends that Birdwell and the City of Italy Police Department ("Italy PD") threatened Carter's wife and encouraged her to lie about his whereabouts at the time of the crime. Doc. 3 at 6; Doc. 8 at 23. Based on this falsified evidence and coerced testimony, Italy PD and Birdwell "deliberately, knowingly, and willingly misled the grand jury to return a false indictment." Doc. 3 at 6. The Ellis County Court and Ellis County District Attorney continued to maliciously prosecute Carter despite the lack of evidence against him, and Carter remains wrongfully incarcerated. Doc. 3 at 8.

Carter also avers that, while incarcerated, Wellpath Medical Services Corp (Wellpath), a private company hired by the Ellis County Sheriff's Department Department (ECSO), denied Carter physical and mental health treatment, despite Carter informing Wellpath personnel that he was a "20% disabled veteran" due to multiple surgeries on his left knee, PTSD and depression, and a concussion he sustained earlier in the day. Doc. 3 at 8; Doc. 8 at 13. Carter additionally alleges he was given a temporary bottom-bunk pass pending receipt of his medical records from the United States Department of Veterans Affairs (VA), which took six months to obtain, and his bottom-bunk pass expired in the meantime. Doc. 8 at 13-14. Carter complains that due to

---

[2] Docket information available online at https://public.lgsonlinesolutions.com/ors.html (search Ellis County District Clerk and Joshua Lee Carter) (last accessed September 22, 2023).

Wellpath's "negligence" in failing to timely obtain his medical records, he is now "40% disabled." Doc. 8 at 14.

Among Carter's other complaints are that (1) he wasn't permitted to see a psychologist and was "cut off" from his medications, Doc. 8 at 14; (2) unspecified "agents" of the ECSO opened his clearly marked legal mail in his absence and prevented him from accessing the law library, Doc. 3 at 8; Doc. 8 at 27; (3) the ECSO violated his right to privacy by hiring a private company to screen inmates' legal mail, Doc. 3 at 10; (4) jail policy is sexist and discriminatory in that books and magazines must comply with the "visitation dress code," but pictures of shirtless men are allowed, Doc. 8 at 27; (5) despite complaints from Carter, Ellis County failed to put an OSHA-approved ladder on his bunk to allow him to move between the top bunk and floor safely after his low-bunk pass expired, in violation of the American with Disability Act (ADA), Doc. 3 at 8-10; Doc. 8 at 14, 20, 32; and (6) the handicapped shower seat is unstable and does not drain and he was denied psychiatric treatment, also in violation of the ADA, Doc. 8 at 32.

Carter asserts claims under 42 U.S.C. § 1983 and the ADA, and names as Defendants the State of Texas, Birdwell, Italy PD, the ECSO, Wellpath, the City of Italy, and Ellis County. Doc. 3 at 3; Doc. 8 at 24-25, 28-29. He seeks monetary and punitive damages in excess of $100,000 or $1,000,000 per defendant, a federal investigation into Defendants' actions, and for the Court to subpoena records from Ellis County that are pertinent to his allegations.[3] Doc. 3 at 16, 18; Doc. 8 at 16, 23, 28.

---

[3] The Court lacks that ability to order an investigation into Carter's complaints. *See Kates v. Micieli*, Civil Action No. 2:09-1447, 2010 WL 55916, at *1 (W.D. La. Jan. 4, 2010) (collecting cases). And subpoenas would be inappropriate, as the Court has not ordered service of Carter's complaint and finds that he fails to state a claim.

3

## II. LAW AND ANALYSIS

As a prisoner proceeding *pro se* and *in forma pauperis*, Carter's complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Those statutes provide for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law when it is premised "on an indisputably meritless legal theory," *Id.* at 327, and fails to state claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court must always liberally construe the pleadings of *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even under the most liberal construction, however, Carter fails to state a claim.

### A. Sovereign Immunity

Carter's claims against the State of Texas, Doc. 3 at 3, are barred by sovereign immunity. Eleventh Amendment immunity bars suit against a state, regardless of whether money damages or injunctive relief is sought. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69-71 (1989) (states are not persons subject to suit under section 1983 because of the Eleventh Amendment). Therefore, Carter's claims for monetary damages against the State of Texas under Section 1983 should be dismissed without prejudice.

### B. Non-Jural Entities

Federal courts in Texas have uniformly held that entities without a separate jural existence, such as municipal police departments, are not subject to suit. *See*, *e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Gordan v. Neugebauer*, No. 1:14-CV-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014). Thus, Carter's claims against Italy PD and the ECSO should be dismissed with prejudice. *Darby*, 939 F.2d at 313; *Jeffery v. Dallas Cty. Med. Exam*, 37 F.Supp.2d 525, 529 (N.D. Tex. 1999).

### C. *Heck* Bar

Carter sues Birdwell in his official and individual capacities for malicious prosecution. Doc. 8 at 22-23. As for the individual-capacity claim[4], the doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any challenge to Carter's arrest and state conviction under Section 1983.

"In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) (citing *Heck*, 512 U.S. at 486-87). Put differently, *Heck* bars a judgment that "necessarily imp[ies] the invalidity" of a conviction unless that conviction has been reversed, invalidated, or otherwise set aside. *See Heck*, 512 U.S. at 487.

---

[4] The claim against Birdwell in his official capacity is, in essence, a claim against Birdwell's employer, Ellis County. *See*, *e.g.*, *Gore v. Cedar Hill Indep. School Dist.*, No. 3:15-cv-3963-M-BN, 2016 WL 4597513, at *5 (N.D. Tex. July 26, 2016), *rec. accepted* 2016 WL 4593515 (N.D. Tex. Sept. 2, 2016). As explained below, Carter fails to plausibly allege a claim against Ellis County.

Here, a ruling in Carter's favor against Birdwell would necessarily implicate the invalidity of Carter's arson conviction because Carter claims that he was arrested and prosecuted based on evidence that Birdwell fabricated and testimony that Birdwell coerced. And Carter has not alleged that his conviction has been reversed, invalidated, or otherwise set aside, so *Heck* bars these claims. *See*, *e.g.*, *Villegas v. Galloway*, 458 F. App'x 334, 337 (5th Cir. 2012) (per curiam) (civil rights claims such as use of perjured testimony and fabricated evidence barred by *Heck*). Thus, Carter's claims against Birdwell in his individual capacity should be dismissed with prejudice until the *Heck* conditions are satisfied.

### D. Municipal Liability

Carter's Section 1983 claims against Wellpath, Ellis County, and the City of Italy should be dismissed because he fails to plausibly allege municipal liability under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

#### i. Wellpath

Carter alleges that Ellis County hired Wellpath to administer medical services at the jail and that Wellpath professionals failed to provide adequate physical and mental healthcare. Doc. 3 at 8; Doc. 8 at 13, 14. "'A private company…that has been hired to run the medical department at a [ ] jail is treated as a municipal or local governmental entity for the purposes of 42 U.S.C. § 1983, and, therefore, claims against such a company are analyzed as *Monell* claims.'" *Alexander v. Southern Health Partners, Inc.*, Civil Action No. 3:22-cv-0395-X, 2023 WL 3961704, at *7 (N.D. Tex. June 12, 2023) (quoting *Guillotte v. Knowlin*, Civil Action No. 21-1422, 2021 WL 7632004, at *2 (E.D. La. Dec. 7, 2021), *rec. accepted* 2022 WL 355509 (E.D. La. Feb. 07, 2022)) (citation omitted). "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or

constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The third *Monell* prong encompasses both "the causal link ('moving force') and the city's degree of culpability ('deliberate indifference' to federally protected rights.)" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).

The only Wellpath policy or custom that Carter identifies is a policy to have counselors "'screen' inmates to determine their eligibility for medication." Doc. 8 at 31. However, he does not identify a policy maker or establish that the policy was deliberately indifferent to his federally protected rights. Further, the Court is not aware of any authority suggesting that the use of a mental health counselor to screen inmates for psychological medications or care is unlawful. Finally, Carter does not and cannot establish that the policy actually caused his alleged injury of being without medication, since he admits he refused to even speak with the counselor. Doc. 8 at 14. Under these facts, it is unknown whether Carter would have been seen by a doctor or if the medication ultimately would have been prescribed, since he was uncooperative.

Thus, Carter fails to state a Section 1983 claim against Wellpath.

### ii. Ellis County

Carter alleges that Ellis County is liable because it employs Birdwell and contracted with Wellpath and is therefore responsible for their actions. Doc. 8 at 24. This argument lacks merit. A municipality cannot be liable under § 1983 on a *respondeat superior* theory. *See Monell*, 436 U.S. at 691.

Next, although Carter complains about many conditions of his confinement, the only condition he attempts to blame on an Ellis County custom or policy is the purported prison

policy pursuant to which "magazines for males are to adhere to 'visitation dress code,' but magazines with shirtless men are allowed…." Doc. 8 at 27. He claims that because of the policy, specifically, the "discriminatory and sexist behavior of jail staff," he has not received several magazines that his family bought for him. Doc. 8 at 27.

     Under *Turner v. Safley*, 482 U.S. 78, 89 (1987), a prison regulation that impinges on an inmate's constitutional rights is "valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. In conducting that analysis, courts consider: (1) whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) " the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "obvious, easy alternatives" to the regulation. *Id.* at 89-91. "The inmate has the burden of demonstrating that there is no rational relationship to a legitimate penological interest." *Keys v. Torres*, 737 F. App'x 717, 719 (5th Cir. 2018) (per curiam) (citing *Prison Legal News*, 683 at 216); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

     Carter does not meet that burden here. His allegations are vague and conclusory. Indeed, it is not even clear from his allegations what the terms of the challenged policy are. He fails to plausibly allege that the policy he challenges is not rationally related to a legitimate penological interest. Finally, to the extent that Carter is challenging "discrimination and sexist behavior by jail staff," he fails to connect this to an Ellis County policy or custom. *See Monell*, 436 U.S. at 691.

     Consequently, Carter fails to state a Section 1983 claim against Ellis County.

### *iii. City of Italy*

Carter claims that the City of Italy is liable because it "assisted in the investigation of Tim Birdwell," and is therefore partly responsible for Birdwell's alleged fabrication of evidence. Doc. 8 at 28. He claims that it is a custom of the City of Italy to seek aid from Ellis County and work alongside it on criminal cases, and, because of that, Birdwell was able to engage in his malicious prosecution. Doc. 8 at 29.

Carter's theory is akin to *respondeat superior* liability because he seeks to hold the City of Italy responsible because another entity that it worked with employed a tortfeasor. Again, as discussed *supra*, Section 1983 proscribes *respondeat superior* liability.

Thus, Carter fails to state a Section 1983 claim against the City of Italy.

### E. ADA Claims

Carter claims that Ellis County violated the ADA by (1) not installing OSHA-compliant ladders on his bunk bed so that he can reach the top bunk, (2) denying him psychiatric treatment, and (3) preventing him from showering "most of the time" because the "handicapped shower seat is unstable and does not drain." Doc. 8 at 32. However, the only physical injury that Carter raises is further deterioration of his knee, which he does not allege is connected to having to climb into his bunk. Doc. 8 at 14. Because the Court would have to speculate that the further deterioration of Carter's knee was due to the lack of an accommodation, or that he was injured at all be the inactions about which he complains, Carter has not sufficiently plead a physical injury in relation to his ADA claims. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("We hold *pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.") (citations omitted).

9

The Prison Litigation Reform Act (PLRA), Title 42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." This provision applies to ADA claims. *See*, *e.g.*, *Cassidy v. Indiana Dept. of Corr.*, 199 F.3d 374, 376-77 (7th Cir. 2000); *Morrison v. Smith Cty. Jail*, Civil Action No. 6:19CV301, 2021 WL 11484450, at *7 (E.D. Tex. Jan. 21, 2021) (applying PLRA's physical injury requirement to ADA claims). It does not, however, limit a plaintiff's ability to pursue nominal and punitive damages based on a violation of his constitutional rights. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

Here, Carter seeks monetary damages, including punitive damages. Given the lack of physical injury in relation to this claim, however, he is not entitled to compensatory damages. 42 U.S.C. § 1997(e)(e). And punitive damages are not available under the ADA, so he is not entitled to those either. *See*, *e.g.*, *Kennemer v. Denton Cty.*, Civil Action No. 4:20-CV-00080-RAS-CAN, 2023 WL 2584924, at *8 (E.D. Tex. Mar. 1, 2023), *rec. accepted* 2023 WL 2574569 (E.D. Tex. Mar. 20, 2023) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)) (further citation omitted).

Finally, Carter does not appear to seek nominal damages. In his complaint, he says that he wants the Court to award "both monetary and punitive damages in excess of one million dollars to the plaintiff by defendants in an amount to be determined and ordered by the Court." Doc. 3 at 16. In his MJQ responses, as against Ellis County, he seeks "both monetary damages in excess of $100,000 to be determined by the Court and punitive damages by way of fines and fees to be determined by the Court." Doc. 8 at 24. Given the amount of money sought, the Court does not construe his pleadings as seeking nominal damages. *See*, *e.g.*, *Regalado v. Mgmt.*

10

*and Training Corp.*, No. 22-10034, 2023 WL 142087, at *2, n.4 (5th Cir. Jan. 10, 2023) (per curiam) (affirming finding that the plaintiff only sought compensatory damages when the operative pleading stated he was seeking damages in excess of $5,000,000 and did not elaborate on the type of damages that he sought in distinction to his prior pleadings that explicitly referenced nominal and punitive damages).

In sum, absent allegations of a physical injury in relation to the claim, Carter is not entitled to the damages he seeks under the ADA, and such claims should be dismissed.

### III. LEAVE TO AMEND

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal, but leave is not required when he has already pled his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). A verified questionnaire response allows a plaintiff to plead his best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam). Here, Carter responded to a detailed MJQ designed to allow him to present his best case. He has plead his best case in relation to the Section 1983 claims, and those claims are clearly meritless. He should not be granted further leave to amend those claims.

With respect to the ADA claims, however, it is not clear Carter <u>cannot</u> allege facts that would allow him to clear PLRA's physical injury bar. Thus, he should be granted the opportunity to amend his ADA claims to cure the deficiencies noted above, if possible.

### IV. CONCLUSION

For the foregoing reasons, Carter's claims against the State of Texas should be **DISMISSED WITHOUT PREJUDICE**, as barred by sovereign immunity. His individual-capacity claims against Birdwell should be **DISMISSED WITH PREJUDICE** to their being

reasserted before the *Heck* conditions are satisfied, and his remaining Section 1983 claims should be **DISMISSED WITH PREJUDICE** for the reasons outlined here.  Carter's ADA claim against Ellis County should likewise be **DISMISSED WITH PREJUDICE**, unless **within 14 days of this recommendation**, he files an amended complaint against Ellis County curing the deficiencies in those claims noted above.

      **SO RECOMMENDED** on September 22, 2023.

                                          RENEE HARRIS TOLIVER
                                          UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).